**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| WILLIAM J. MATHEWS,<br><br>                              Plaintiff,<br><br>                    v.<br><br>CINGULAR WIRELESS D/B/A AT&T<br>MOBILITY, et al.<br><br>                              Defendants. | Civil Action No. 2:08-cv-05650<br>(SDW) (ES)<br><br><br>**OPINION**<br><br><br>February 16, 2011 |

**WIGENTON**, District Judge.

Before the Court is Defendants' Motion for Summary Judgment ("Motion")
pursuant to Federal Rule of Civil Procedure 56.  This Court has jurisdiction pursuant to
28 U.S.C. § 1331.  Venue is proper pursuant to 28 U.S.C. § 1391(b).  This Court, having
considered the parties' submissions, decides this matter without oral argument pursuant
to Federal Rule of Civil Procedure 78.  For the reasons stated below, this Court
**GRANTS** Defendants' Motion.

**FACTUAL AND PROCEDURAL BACKGROUND**

William J. Mathews brought an action against Defendants Cingular Wireless d/b/a
AT&T Mobility ("AT&T"), Thomas DeVito, and Lance Schulman arising out of his
participation in an internal investigation of AT&T.  (Compl. 2-3.)  Plaintiff alleges
Defendants violated 42 U.S.C. § 2000e-3 and NJSA 10:5-1, et seq., by retaliating against
Plaintiff for his having assisted another employee with that employee's complaint against
Schulman.  (Am. Compl. 4; Defs.' Ex. A at 31-35.)  Defendants move for summary
judgment on these two counts.

1

From 2004 until 2007, Plaintiff worked as Area Retail Sales Manager ("ARSM") in AT&T's New York/New Jersey Market. (Defs.' Ex. A at 16, 18.) In 2007, Plaintiff transferred to the Savannah Market and continues to work there as an ARSM. (Defs.' Ex. M at 12.)

Plaintiff alleges that in or around April 2005, Plaintiff and Pedro Delgado, asked Schulman to return a laptop Schulman had removed from Delgado's store. (Defs.' Ex. A at 31-32.) According to Plaintiff, Schulman responded to this request by stating that he would inflict some form of physical harm upon Plaintiff.[1] (Defs.' Ex. A at 32; Defs.' Ex. B at 14-15; Defs.' Ex. C at 20.) Schulman then allegedly remarked to Delgado, "I don't know why you need the laptop. I didn't think Puerto Ricans knew how to use computers." (Defs.' Ex. A at 32.) Schulman allegedly called Plaintiff a "D[i]ck." (Defs.' Ex. F.) Plaintiff walked away upon hearing Schulman's comment. (Defs.' Ex. A at 32.)

After this incident, Delgado filed an ethics complaint, which was investigated by Human Resources at AT&T. (Defs.' Ex. A at 34-36.) The Human Resources Manager, Jim Booth, called Plaintiff to confirm the allegations made by Delgado. (Defs.' Ex. A at 34.) At first, Plaintiff did not want to get involved with the investigation, but confirmed Schulman's remarks over the phone. (*Id.* at 35.) The phone conversation with Booth was the extent of Plaintiff's involvement with the investigation. (*Id.*) In May 2005, Schulman received a final written warning. (Defs.' Ex. C at 25.) The purpose behind giving Schulman a final written warning was due to:

---

[1] According to Plaintiff, Schulman threatened to "beat the shit" out of Plaintiff. (Defs.' Ex. A at 32.) Yet, DeVito and Schulman both agreed during their depositions that Schulman made the comment to Plaintiff, "I'll kick your ass." (Defs.' Ex. B at 14-15; Defs.' Ex. C at 20.)

> Making inappropriate comments to employees in a subordinate role, but
> non direct reporting.
> Using inappropriate language.
> Making comments that could be perceived as threatening.

[Defs.' Ex. G.]

After the April 2005 incident, Plaintiff did not suffer any retaliatory actions between April 2005 and November 2005.  (Defs.' Ex. A at 37, 42.)  However, Plaintiff believes that he was later unfairly singled out and "had to run faster and jump higher than the average."  (Defs.' Ex. A at 37-8.)  Plaintiff contends Defendants' reneged on their promise to raise salary his salary.  (Defs.' Ex. A at 42-43.)  Further, Plaintiff believed that his supervisors were more focused on Plaintiff's results than on those of other ARSMs.  (Defs.' Ex. A at 38.)

By 2006, Plaintiff experienced several incidents that he believes were retaliatory in nature.  First, in February 2006 Plaintiff received an unfavorable performance review for 2005 (Defs.' Ex. J; Defs.' Ex. A at 56-61; Defs.' Ex. K.)  Plaintiff believes the 2005 performance review was an unfair assessment of his work considering Plaintiff was awarded the 2005 Area Manager of the Year.  (Defs.' Ex. A at 47.)  Second, on March 13, 2006, a Performance Improvement Plan ("PIP") was drafted for Plaintiff outlining various problems with Plaintiff's management of his New Jersey stores.  (Defs.' Ex. L.)  Around the same time as the PIP, Plaintiff filed a complaint with the EEOC based on discrimination.  (Defs.' Ex. A at 76.)

By December 2006, Plaintiff filed a complaint against Schulman for his comments during an awards dinner.  (*Id.* at 82.)  Schulman allegedly made several sexual remarks, including a comment that Plaintiff perceived was directed at his wife. (*Id.* at 82-84.)  After Schulman's termination in January 2007, Plaintiff received a more than

3

favorable performance review from his interim supervisor, DeVito.  (Defs.' Exs. C and M; Defs.' Ex. B at 28-29.)

Plaintiff contends he suffered lost compensation "in the form of rescinded salary increase," a promotion, reduced bonuses, future lost compensation, reduced contribution to retirement vehicles, emotional distress damages, and punitive damages as a result of the above actions.  (*Id.*)  Yet, Plaintiff concedes that he was able to transfer to the Savannah market at the same pay and in the same position.  (Defs.' Ex. A at 110.) Defendants claim that Plaintiff never applied for a promotion when one was available and he received two salary increases, one in April 2006 and another in January 2007, during his tenure in the New York/New Jersey market.  (Defs.' Ex. A at 103-04; Defs.' Ex. B at 47-48.)

**DISCUSSION**

**<u>Legal Standard</u>**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A factual dispute is genuine if a reasonable jury could return a verdict for the nonmovant, and it is material if, under the substantive law, it would affect the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Once the moving party meets the initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the

4

mere allegations or denials of its pleadings.  *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001).  The court may not weigh the evidence and determine the truth of the matter but rather determine whether there is a genuine issue as to a material fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249.  In doing so, the court must construe the facts and inferences in a light most favorable to the nonmoving party.  *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991).

The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue."  *Podobuik v. United States Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005).  "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves . . . ."  *Celotex Corp. v. Catrett*, 477 U.S. at 324.  A motion for summary judgment is meant to go beyond the pleadings and therefore "factual specificity is required of a party who opposes such a motion."  *Black Car Assistance Corp. v. New Jersey*, 351 F. Supp. 2d 284, 286 (D.N.J. 2004).  Further the nonmoving party is required to "point to concrete evidence in the record which supports each essential element of its case."  *Id.*  If the nonmoving party "fails to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. at 322-23.

**Procedural Analysis**

Defendants raise three procedural objections to Plaintiff's papers in response to Defendants' motion for summary judgment.  According to Defendants, Plaintiff failed to properly respond to Defendants' Statement of Material Facts Not in Dispute; to submit a

sworn affidavit with his Brief in Opposition to Summary Judgment; and to provide Defendants with the exhibits that accompanied the Certification in Opposition to Motion for Summary Judgment as required under Federal Rules of Civil Procedure. Therefore, Defendants ask this Court to disregard Plaintiff's Certification and accept only Defendants' Statement of Material Facts Not in Dispute.

**Local Rule 56.1- Statement of Material Facts**

Local Rule 56.1 "requires that both the proponent and opponent of a motion for summary must submit a statement identifying material facts in such fashion that the Court can easily determine if a genuine dispute exists." *Vibra-Tech Engineers, Inc. v. Kavalek*, 2011 WL 111417, at *3 (D.N.J., Jan. 13, 2011) (quoting L.Civ.R. 56.1, commentary). In this case, Plaintiff did indeed submit a Statement of Material Facts in Opposition. (See ECF No. 26.) Yet, as Defendants correctly point out, Plaintiff's Statement of Material Facts did not follow the moving party's Statement of Material Facts Not in Dispute and was difficult to follow. Other decisions within this District have indicated that the consequence of noncompliance with Local Rule 56.1 may either be severe or simply admonish the party for failure to follow the local rules. *Vibra-Tech*, 2011 WL 111417, at *3;* see also *Comose v. N.J. Transit Rail Operations, Inc.*, No. 98-23455, 2000 WL 33258658, at *1 (D.N.J. Oct. 6, 2000). We will, however, excuse Plaintiff's noncompliance in the instant case and admonish Plaintiff for failing to follow the local rules.

**Affidavit**

Plaintiff submitted a Certification in Opposition to Motion for Summary Judgment, which supplemented Plaintiff's Brief in Opposition to Motion for Summary

Judgment.  (See ECF Nos. 26-29.)  Rule 56(c)(4) of the Federal Rules of Civil Procedure discusses affidavits for the purpose of supplementing a party's memorandum in opposition to summary judgment motions.  Fed. R. Civ. P. 56(c)(4).  Such affidavits "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated . . . ."  Fed. R. Civ. P. 56(c)(4); see *Brokenbaugh v. Exel Logistics N. Am., Inc.*, 2006 WL 565685, at *42-43 (3rd Cir. Mar. 9, 2006); *Freeman v. Minnesota Min. & Mfg. Co.*, 675 F. Supp. 877, 887 (D.Del. 1987); see also *Automatic Radio Mfg. Co. v. Hazeltine Research, Inc.*, 339 U.S. 827, 831 (1950) (stating "[an affidavit] made upon information and belief . . . does not comply with Rule 56(e)").

In this case, Plaintiff's Certification contained two procedural defects.  First, Plaintiff did not sign the Certification, which essentially served as an affidavit by Plaintiff.  (Pl.'s Certification 10.)  Second, assuming Plaintiff had signed the document, the Certification only includes a statement by the affiant that "I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing is false, I am subject to punishment."  *Id.*  The Certification did not include any language that guaranteed Plaintiff was making statements on personal knowledge.  For these reasons, Plaintiff's Certification will be disregarded.

**Exhibits Attached to Certification**

Lastly, Defendants argue Plaintiff identified five other incidents of retaliation that were not raised before the "Certification," and that disclosing these incidents only after Defendants filed their motion for summary judgment is unfair to Defendants.  (Defs.' Reply Br. 8.)  This Court agrees with Defendants and does not understand why Plaintiff

waited after Defendants  moved for summary judgment to submit its exhibits.  Under

Federal Rules of Civil Procedure, Rule 26(a)(1)(A)(ii), a party must without "awaiting a

discovery request" furnish all documents that it intends to use to "support its claims or

defenses."  Clearly, the exhibits submitted with the Certification fall within the purview

of Rule 26.  Plaintiff's exhibits submitted with the Certification will be disregarded.

**<u>Substantive Analysis</u>**

**Federal Claim**

To establish a *prima facie* case of retaliation under Title VII of the Civil Rights

Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) ("Title VII"), Plaintiff must prove that:

**"**(1) he engaged in conduct protected by Title VII; (2) his employer took an adverse

action against him either after or contemporaneous with the protected activity; and (3) a

causal link exists between his protected conduct and the employer's adverse action."  See

*Slagle v. County of Clarion*, 435 F.3d 262, 265 (3d Cir. 2006) (citing *Western v.*

*Pennsylvania,* 251 F.3d 420, 430 (3d Cir. 2001)).

Title VII "prohibits employers from discriminating on the basis of race, color,

religion, sex, or national origin."  *Slagle v. County of Clarion*, 435 F.3d at 265; 42 U.S.C.

§ 2000e-2.  Title VII provides:

> It shall be an unlawful employment practice for an employer to
> discriminate against any of his employees . . . because he has
> opposed any practice made an unlawful employment practice by
> this subchapter, or because he has made a charge, testified,
> assisted, or *participated in any manner* in an *investigation*,
> proceeding, or hearing under this subchapter.

[42 U.S.C. § 2000e-3(a) (emphasis added)].

It is important to distinguish between the "opposition clause" and the

"participation clause" in Section 704(a).  *Robinson v. Southeastern Pa. Trans. Auth.*, 982

8

F.2d 892, 896 n.4 (3d Cir. 1993); see also *Slagle*, 435 F.3d at 266.  "[T]he opposition and

participation clauses are drafted in the disjunctive, indicating there is a distinction to be

made in the actions protected by each.  Put another way, the activity protected by each

clause differs."  *Tuthill v. Consolidated Rail Corp.*, No. 96-6868, 1997 WL 560603, at *3

(Ed. Pa. Aug. 26, 1997) (citing *Morris v. Boston Edison Co.*, 942 F.Supp. 65, 70

(D.Mass. 1996)).

　　　　"The 'opposition clause' prohibits retaliation because the employee opposed any

practice made unlawful by Title VII."  *Id.* (citing *Robinson*, 982 F.2d at 896 n. 4).  In

contrast, the "participation clause" prohibits retaliatory acts by the employer because the

employee "charged, testified, assisted or participated" in an "investigation, proceeding, or

hearing" pursuant to Title VII.  *Robinson*, 982 F.2d at 896 n. 4.  The "participation

clause" is considered to give employees broader protection for a more limited range of

activities, but it gives "stronger" protection than the "opposition clause."  *Tuthill*, 1997

WL 560603, at *3; see *Slagle,* 435 F.3d at 266.

　　　　Plaintiff, by his own admission, characterizes his activity as participation, not an

"opposition."  (Defs.' Ex. A. at 32- 34.)  Based on the facts of this case, Plaintiff's claims

fall under the "participation clause."  "In order to establish a claim under the

'participation clause,' the investigation, proceeding[,] or hearing must fall within the

confines of the procedures set forth in Title VII." *Tuthill*, 1997 WL 560603, at *3.  A

participation in an internal investigation does not fall under  "protected activity" for

purposes of Title VII claims.  See *Slagle*, 435 F.3d at 267 (quoting *Learned v. City of

Bellevue*, 860 F.2d 928, 932 (9th Cir. 1988) (stating that "[t]he mere fact that an

employee is participating in an investigation or proceeding involving charges of some

sort of discrimination . . . does not automatically trigger the protection afforded under Section 704(a)")); see also *Tuthill*, 1997 WL 560603, at *4 (stating that "testifying at employer's internal investigation into alleged discrimination is not participation").

Plaintiff's claim is based on a "participation clause" action, and "for the activity to be actionable," Plaintiff must demonstrate that his activity is an "investigation, proceeding, or hearing under Title VII." *Tuthill*, 1997 WL 560603, at *4. Plaintiff has not provided evidence that Delgado submitted an EEOC complaint in response to the Delgado incident. Furthermore, Plaintiff admits his activity was an internal investigation that was carried out by the Human Resources Manager, Jim Booth. (Defs.' Ex. A at 34.) In addition to this admission, Plaintiff states that "at first [he] tried to stay out of it" and the extent of his participation was one phone conversation with Jim Booth. (Defs.' Ex. A at 34-35.)

Thus, Plaintiff did not engage in a "protected activity," which is the first element of a *prima facie* Title VII case. Since all three elements are required for a plaintiff to prevail in his claim, the Court will not discuss the alleged adverse action by Defendants nor the causal link between the protected activity and the adverse action. Furthermore, due to Plaintiff's failure in satisfying the first element of a *prima facie* Title VII case, no genuine issue as to a material fact exists. Thus, Plaintiff's claim is dismissed on summary judgment with prejudice.

**Pendent State Claim**

In addition to the Title VII federal claim, Plaintiff asserted a claim based on state law, the New Jersey Law against Discrimination, N.J.S.A. 10:5-1, et seq. (Pl.'s Am. Compl. 4-5.) The Supreme Court has vested the federal courts with the authority to

review pendent state claims if the federal and state claims "derive from a common nucleus of operative fact" and the plaintiff "would ordinarily be expected to try them all in one judicial proceeding."  *United Mine Workers v. Gibbs,* 383 U.S. 715, 725 (1966). "Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."  *Id.* at 726.  In a later opinion, the Court declared that the district court has "discretion to retain jurisdiction over" any remaining state claims after the federal claims become moot. *Rogin v. Bensalem Township*, 616 F.2d 680, 697 (3d Cir. 1980) (citing *Rosado v. Wyman*, 397 U.S. 397, 403 (1970).  Accordingly, we decline to retain jurisdiction over the pendent state claim.

**CONCLUSION**

For the reasons stated above, Defendants' motion for summary judgment is **GRANTED.**

<u>s/Susan D. Wigenton, U.S.D.J.</u>

Orig:   Clerk
Cc:     Esther Salas, U.S.M.J.
        Parties

11